Argued and submitted September 28, 1981, reversed
and remanded for further proceedings September 15, 1982

## CITY OF ASHLAND,
*Petitioner,*

*v.*

## BEAR CREEK VALLEY SANITARY
## AUTHORITY,
*Respondent.*

(81-008)

## JACKSON COUNTY,
*Petitioner,*

*v.*

## BEAR CREEK VALLEY SANITARY
## AUTHORITY,
*Respondent.*

(81-010)
(CA A21211)

650 P2d 975

Mark J. Greenfield, Portland, argued the cause and filed the brief for petitioner City of Ashland.

John L. DuBay, County Counsel, Medford, argued the cause and filed the brief for petitioner Jackson County.

Manville M. Heisel, Medford, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners City of Ashland and Jackson County seek judicial review of a final order of the Land Use Board of Appeals (LUBA) dismissing their consolidated petitions for review of an action taken by the respondent sanitary district identifying a public health-related problem and authorizing construction of an expanded sewer system, on the ground that the action taken is not a reviewable land use decision. We reverse and remand.

On December 23, 1980, Bear Creek Valley Sanitary Authority (BCVSA) adopted Ordinance 81-14, which states in relevant part:

"In accordance with the findings and determinations made by the Board of Directors of the Bear Creek Valley Sanitary Authority following the public hearing held pursuant to ORS 450.850 and Ordinance No. 72-1, as amended, of the Authority, within the Bear Creek Valley Sanitary Authority, it having been found and determined that there is a violation or threatened violation of the water quality standards established by OAR 340-41-365 pursuant to ORS 468.735, and that to protect the public health, safety and welfare of the residents and inhabitants of the Bear Creek Valley Sanitary Authority, including the area within the boundaries of Project No. 79-3, the Authority is authorized to construct sanitary sewer lines within the Bear Creek Valley Sanitary Authority in the area served by the North Ashland Interchange Project No. 79-3 consisting of:

"* * * * *

"all in accordance with the proposed revised plans and specifications contained in the Manager's Report dated June 18, 1980, which have been approved by the Health Division of the Department of Human Resources, the Department of Environmental Quality of the State of Oregon and the Board of Directors of the Bear Creek Valley Sanitary Authority, and the Board of Directors has considered the recommendations of the Jackson County Planning Commission endorsed by the Jackson County Board of Commissioners and has found and determined that Project No. 79-3 implements the comprehensive sewer plan of the Bear Creek Valley Sanitary Authority, is consistent with the Jackson County Comprehensive Plan and does not violate statewide planning goals adopted pursuant to ORS 197.040. * * *"

The area within the project boundaries consists of about 350 acres north of the city limits of Ashland and outside the city's urban growth boundary. One hundred ninety acres are either vacant or are in farm use. The project consists of over 17,000 linear feet of sewer pipe and two pump stations.

Petitioners filed petitions with LUBA alleging that the adoption of the ordinance violated statewide planning goals 2, 3, 11 and 14; that BCVSA lacked authority to declare a health hazard; and that the findings of a health hazard were not supported by substantial evidence in the record. The cases were consolidated before LUBA. In the order of dismissal, despite its recognition that extension of sewer services can affect land use development,[1] LUBA ruled that this action was not within the scope of its reviewing authority, relying on two Supreme Court cases.

■  In *West Side Sanitary District v. LCDC, No. 26780,* 289 Or 393, 614 P2d 1141 (1980) *(West Side I),* the court held that the declaration of a health hazard by the Health Division of the Department of Human Resources was not a land use action to which statewide planning goals apply under ORS 197.180(1)[2] and over which LCDC had jurisdiction:

> "A Health Division order finding a danger to public · health is not an action 'with respect to programs affecting

---

[1] Sewer facilities are contemplated in the land use statutes and the statewide planning goals. The definition of comprehensive plan in ORS 197.015(5) identifies sewer systems as a functional or natural system or activity relating to the use of lands. Goal 11 (Public Facilities and Services) identifies sanitary facilities as urban facilities and requires that urban and rural development be "supported by types and levels of urban and rural public facilities and services appropriate for, but limited to, the needs and requirements of the urban, urbanizable and rural areas to be served."

[2] At the time of the *West Side* cases, ORS 197.180(1) provided:

"State agencies shall carry out their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use in accordance with statewide planning goals approved pursuant to ORS 197.005 to 197.430 and 469.350."

A similar provision exists for special districts. ORS 197.185(1) provides:

"Special districts shall exercise their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use, including a city or special district boundary change as defined in ORS 197.175(1), in accordance with goals approved pursuant to ORS 197.005 to 197.430 and 197.605 to 197.650."

land use' to which the legislature intended ORS 197.180(1) to apply. The 'program' required of the Health Division by ORS 222.870 and 222.880 involves a single factfinding procedure. When the Health Division must determine whether a danger to public health exists in a territory, it is concerned with current public health conditions and not with future land use implications. Statewide planning goals are of no assistance in determining whether a health hazard exists in a territory. We conclude, therefore, that the legislature did not intend, in either ORS 197.180(1) or ORS 222.880, that the Health Division consider planning goals when it determines whether a health hazard presently exists in an area." 289 Or at 398.

LUBA concluded here that a declaration of a health hazard, even though made by a special district, was essentially no different from that made by the Health Division in *West Side I;* therefore, the statewide goals were inapplicable to such a declaration. Assuming that the sanitary authority here had authority to "declare a health hazard,"[3] we agree: the declaration alone does not invoke statewide land use goals.

■      The ordinance here, however, did substantially more than identify a public health-related problem; it authorized construction of an extensive sewer line with two pumping stations. LUBA also relied on *West Side Sanitary District v. LCDC, No. 26779,* 289 Or 409, 614 P2d 1148 (1980) *(West Side II),* a companion case to *West Side I.* In *West Side II,* the court held that an order made by the Environmental Quality Commission (EQC) approving a plan by the city of Klamath Falls to construct sewers was not a land use decision reviewable by LCDC, because EQC's

---

[3] Such authority, or at least the authority to identify a public health-related problem, appears to be implicit in ORS 450.845, which provides in relevant part:

"Whenever the board deems it expedient or necessary for the protection of the public health, safety and welfare to cause to be constructed treatment plants or trunk or lateral sewers or drains, or any combination thereof, the board shall determine the proposed boundaries of the area to be directly benefited thereby and have a registered professional engineer prepare plans and specifications for such plants, sewers or drains. Such plans and specifications must be approved by the Health Division and the Environmental Quality Commission and shall be filed in the office of the authority. * * *"

We need not decide the statutory authority question, because we determine that the statewide planning goals apply to authorization of the sewer construction project.

reviewing authority under ORS 222.898[4] was limited to determining whether the plan was adequate to solve the health problem:

> "We are of the opinion that the legislature did not intend application of ORS 222.898, by either EQC or the Health Division, to involve a consideration of land use planning goals. ORS 222.898 is directed toward solving a health problem efficiently and adequately. If the city does not present an adequate plan, ORS 222.898(3) requires the city to revise its proposals. If the city plan is adequate, then city annexation is *mandated* by the statute. EQC has no discretion to apply land use planning goals in its evaluation under ORS 222.898 of whether the city plan is adequate to solve the health problems. [Footnote omitted.]" (Emphasis in original.) 289 Or at 415.

In *West Side II,* the action under review by LCDC was not that taken by the city or by the sanitary district, but rather, EQC's certification of the plan as adequate to alleviate the health hazard. The court held only that, because of the statutorily limited nature of EQC's authority to determine the adequacy of the plan, certification did not depend on statewide planning goals.

With regard to BCVSA's authorization of the sewer construction, LUBA stated:

---

[4] At the time of the *West Side* cases, ORS 222.898 provided:

"(1) Within 60 days of receipt of the preliminary plans and other documents submitted as required by ORS 222.897, the appropriate reviewing authority [here, EQC] shall determine whether the conditions dangerous to public health within the territory proposed to be annexed can be removed or alleviated by the sanitary, water or other facilities proposed by the plans and specifications.

"(2) If such authority considers the proposed facilities and the time schedule for installation of such facilities adequate to remove or alleviate the dangerous conditions, it shall approve the proposal and certify its approval to the city.

"(3) If the authority considers the proposed facilities or time schedule inadequate, it shall. disapprove the proposal and certify its disapproval to the city including the particular matters causing the disapproval. The city council shall then submit an additional or revised proposal.

"(4) In the event the authority upon review of the plans and other documents submitted under subsection (1) of this section determines that the danger to public health in the area proposed to be annexed cannot be removed or alleviated by sanitary, water or other facilities ordinarily provided by incorporated cities it shall terminate the proceedings upon the proposal and notify the city."

"After it found the hazard to exist, the BCVSA acted in the same way as a city would act under ORS 222.850 to ORS 222.915: it drew up a plan ·to alleviate the problem. * * * Here, the plan to alleviate the hazard was made by the district, but it nonetheless was made to remedy the health hazard. As such, it was undertaken for public health and safety purposes and not land use planning purposes.[3]"

---

[3]

"The district has authority under ORS 450.815, 830 and 845 to construct sewers where 'necessary or expedient.' We do not express an opinion as to our power to review a decision to extend sewer services where the *district* is not doing what it has found to be necessary to correct a health hazard." (Emphasis in original.)

That a sanitary district has taken action it deems necessary to correct a health hazard does not negate the conclusion that authorization of sewer construction entails land use considerations, both present and future. We do not understand the Supreme Court to have fashioned a broad exemption from land use review for all sewer projects because they are undertaken for public health reasons. Rather, the *West Side* cases established narrow exemptions to land use review for two statutorily limited determinations that do not involve land use considerations: the Health Division's declaration of a health hazard and EQC's determination of a plan's adequacy to alleviate a health hazard. Neither of those determinations is under scrutiny here; the action under review is that taken by BCVSA. The *West Side* cases fall far short of holding that a special district's authorization of a sewer expansion plan for public health-related purposes is not a land use decision, and we are not persuaded that the holding of the *West Side* cases may, or should, be generalized to cover the situation presented here.

Unlike the Health Division or the EQC, BCVSA is not statutorily limited to review only the public health aspects of its plan in authorizing construction of sewer lines. As LUBA recognized, extension of sewer systems can affect land use. The existence of a sewer line attracts development along its course. Moreover, unlike the statutory scheme involved in the *West Side* cases (that is, ORS 222.850-.915 governing compulsory annexation to alleviate health hazards), there are no safeguards operating here to

ensure that the plan is limited to that strictly necessary to correct a current public health hazard.[5] BCVSA's ordinance is evidence that BCVSA recognized the relevancy of land use considerations, for it recites that the project is consistent with the comprehensive plan of the county and that it satisfies the statewide goals. Finally, the record reveals that there were a number of possible alternatives to extension of sewer lines, including on-site systems, holding tanks or a package treatment plant. Because those alternatives could have differing impacts on land use and on future development, authorization of this plan necessarily entails land use considerations.

Petitioners alleged before LUBA that the ordinance authorizes construction of an urban level of sewer facilities to serve rural agricultural land outside the Ashland urban growth boundary, in violation of goals 3, 11 and 14. LUBA, then, was squarely presented with the conflict between petitioners' and BCVSA's assessment of whether the statewide planning goals were satisfied by the plan to construct sewer lines. The question is whether LUBA had jurisdiction to resolve the conflict.

LUBA's jurisdiction at the time relevant here was governed by Or Laws 1979, ch 772, § 3(1):

"(1)  'Land use decision' means:

_____

[5] ORS 222.900(3), which, at the time of the *West Side* cases, provided in relevant part:

"(3) If the division makes its finding under subsection (3) of ORS 222.880, the city shall not annex a greater area than that described in the finding. * * *"

At that time, ORS 222.880(3) provided:

"(3) If the assistant director determines that a danger to public health exists because of conditions within only part of the area proposed to be annexed, the assistant director may, upon petition and hearing, reduce the boundaries of the area to that part of the area that presents a danger if the area to be excluded would not be surrounded by the territory remaining to be annexed and would not be directly served by the sanitary, water or other facilities necessary to remove or alleviate the danger to public health existing within the territory remaining to be annexed. The findings shall describe the boundaries of the area as reduced by the assistant director. The assistant director shall file a certified copy of his findings with the city and, except where the condition causing the danger to public health is impure or inadequate domestic water, the commission."

"(a)  A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:

"(A)  The state-wide planning goals;

"(B)  A comprehensive plan provision; or

"(C)  A zoning, subdivision or other ordinance

"(b)  A final decision or determination of a state agency other than the Land Conservation and Development Commission, with respect to which the agency is required to apply the state-wide planning goals."

We conclude that, although BCVSA's motivation to formulate a plan to extend sewer service may have arisen out of the perceived need to alleviate a public health-related problem, BCVSA's authorization of this plan, inasmuch as considerations of appropriate levels of service and effects on land use development are necessarily involved, "concerns the * * * application of the state-wide planning goals" within the meaning of Or Laws 1979, ch 772, § 3(1). The *West Side* cases do not dictate a contrary result. LUBA, therefore, erred in concluding that it lacked jurisdiction to consider this petition.

Reversed and remanded for further proceedings consistent with this opinion.